**SEALED**



## IN THE UNITED STATES DISTRICT COURT

### FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| JOANN JOHNSON DAVIS | : | 1:23CR 57 -1 |
| CLINTESS ROBERTA BARRETT-JOHNSON | : | 1:23CR 57 -2 |
| MI'CHELLE NECOLE BELL-JOHNSON | : | 1:23CR 57 -3 |
| ROBERT JOHNSON, JR. | : | 1:23CR 57 -4 |
| CANDACE AGATHA BRUNSON-POOLE | : | 1:23CR 57 -5 |

The Grand Jury charges:

### COUNT ONE
(Conspiracy to Commit Wire Fraud)

At all times relevant herein:

1.      The Chatham County Housing Authority (CCHA) was a local government agency that received, in every one-year period between January 1, 2017, and December 31, 2020, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, that is, funds provided by the United States Department of Housing and Urban Development ("HUD").

2.      HUD's Housing Choice Voucher Program, also colloquially known as "Section 8," assists low-income families, the elderly, and the disabled with affording decent, safe, and sanitary housing in the private market. Housing

choice vouchers are administered locally by public housing agencies (PHAs). The PHAs receive federal funds from HUD to administer the voucher program. The CCHA is a PHA.

3. HUD regulations prohibit HUD employees from providing services to PHAs for payment.

4. HUD regulations classify purchases for goods and services by PHAs that are between $2,000 and $100,000 as "small purchases." According to Chapter 5 of HUD Handbook 7460.8 and regulations regarding requirements for federal awards, PHAs are required to competitively bid out contracts for work if they cost over $2,000.

5. PHAs can satisfy the bidding process by soliciting price quotes from "an adequate number of qualified sources" (typically not less than three for small purchases). Quotes may be obtained in writing or orally. Quotations are to be evaluated for price, as well as performance history of bidders, and comparison of goods and services offered by each bidder. According to the HUD Handbook, PHAs "must make awards only to responsible contractors possessing the ability to perform successfully under the terms and conditions of the proposed procurement."

6.    While the CCHA did not specifically put these requirements into its own regulations, the CCHA provided competitive bid proposals to investigators as evidence of compliance with HUD regulations.

7.    The CCHA invited bid proposals for a variety of services, including but not limited to lawn care services, cleaning services, Section 8 Management Assessment Program ("SEMAP") training for voucher recipients, and Landlord-Tenant relationship training, among others.

8.    From on or about July 2012 up to and including the present day, JOANN JOHNSON DAVIS [1] was employed as the Executive Director of CCHA.  As such, DAVIS [1] had the authority to select the winning bid proposal among proposals received for each small purchase contract. DAVIS [1] also approved all requests for CCHA checks payable related to small purchase contracts and submitted them for approval by the CCHA Board of Directors. Prior to working for CCHA, DAVIS [1] worked at the Durham County Housing Authority and the Gaston County Housing Authority.

9.    From on or about 2012 up to and including 2019, Felicia Revonda Little, as a self-employed independent contractor, provided various services to the CCHA, including: a) training for employees of various PHAs regarding the Housing Choice Voucher Program; b) inspections of rental units eligible for the

3

Housing Choice Voucher Program; and c) solicitation and review of bid proposals for small purchase contracts. Felicia Revonda Little knew that the process for awarding CCHA small purchase contracts required a competitive bid process. Little was a friend of JOANN JOHNSON DAVIS [1] and the two had previously worked together at the Durham County Housing Authority.

10. From on or about 2012 up to and including 2021, CLINTESS ROBERTA BARRETT-JOHNSON [2], first as an employee and then as a self-employed independent contractor, provided various services to the CCHA, including solicitation and review of bid proposals for small purchase contracts. BARRETT-JOHNSON [2] knew that the process for awarding CCHA small purchase contracts required a competitive bid process. BARRETT-JOHNSON was a friend of JOANN JOHNSON DAVIS [1] and the two had previously worked together at the Durham County Housing Authority and the Gaston County Housing Authority.

11. From on or about 2016 up to and including 2020, MI'CHELLE NECOLE BELL-JOHNSON [3], as a self-employed independent contractor, received payment from CCHA for purported services provided, that is, leading workshops, providing language translation services, and inputting information into CCHA's document management system. Specifically, between January

4

2016 and April 2020, BELL-JOHNSON [3] was paid approximately $83,977.50 in CCHA funds, payable to her at an address located in Chapel Hill, North Carolina. BELL-JOHNSON [3] is a relative of JOANN JOHNSON DAVIS [1].

12.    From on or about 2018 up to and including 2019, ROBERT JOHNSON, JR. [4], bid on, and was awarded, various small purchase contracts with CCHA under the organizational name "Robert L Johnson Consulting." These small purchase contracts included awards related to VMS data validation and Housing Choice Voucher Program premises inspection. JOHNSON, JR., is a relative of JOANN JOHNSON DAVIS [1].

13.    Since 2010 up to and including the present date, CANDACE AGATHA BRUNSON-POOLE [5] has been employed by HUD, serving at various times as a portfolio management specialist, a public housing inspecting coach, and technical assistant to PHAs, and working at HUD's Atlanta and Greensboro offices. During her employment with HUD, BRUNSON-POOLE [5] has been aware that, as a HUD employee, she could not provide paid services to a PHA such as the CCHA without a conflict waiver from HUD. BRUNSON-POOLE [5] was a friend of JOANN JOHNSON DAVIS [1] and had worked with CLINTESS ROBERTA BARRETT-JOHNSON [2] at the Durham County Housing Authority.

14.     From in or about January 2016 up to and including March 2020, the exact dates unknown to the Grand Jurors, Unindicted Co-Conspirator 1 (CC-1), first as an employee and then as a self-employed independent contractor, provided services to CCHA under the titles "housing counselor and "group facilitator." CC-1 was a friend of JOANN JOHNSON DAVIS [1] and Felecia Revonda Little. CC-1 is now deceased.

15.     Below is a chart identifying other unindicted co-conspirators (CC) (and their relation to DAVIS [1]) who were awarded small purchase contracts by JOANN JOHNSON DAVIS [1], despite never actually having submitted a bid for a CCHA small purchase contract:

| CC | RELATION |
|----|----------|
| 2  | Relative |
| 3  | Relative |
| 4  | Friend   |
| 5  | Friend   |
| 6  | Relative |
| 7  | Relative |
| 8  | Friend   |

6

| CC | RELATION |
|:---:|:---:|
| 9 | Friend |
| 10 | Friend |
| 11 | Relative |

16.     Unindicted Co-Conspirator 12 (CC-12) is a relative of JOANN JOHNSON DAVIS [1]. CC-12 is identified in a small purchase contract bid as a "Dr." but her social media professional profile does not identify her as such, nor does it list a doctorate when describing her educational background.

17.     Unindicted Co-Conspirator 13 (CC-13) is a relative of JOANN JOHNSON DAVIS [1].

18.     Unindicted Co-Conspirator 14 (CC-14) was a self-employed cosmetologist and the self-proclaimed sole proprietor of the business entity named Infinite Solutions, which has never been registered with the North Carolina Secretary of State.

## THE SCHEME TO DEFRAUD

19.     From in or around 2016, through in or around April 2020, the exact dates to the Grand Jurors unknown, in the Middle District of North Carolina, and elsewhere, JOANN JOHNSON DAVIS [1], CLINTESS ROBERTA JOHNSON BARRETT [2], MI'CHELLE NECOLE BELL-JOHNSON [3], ROBERT JOHNSON, JR. [4], CANDACE AGATHA BRUNSON-POOLE [5], Felecia Revonda Little, CC-1, CC-2, CC-3, CC-4, CC-5, CC-6, CC-7, CC-8, CC-9, CC-10, CC-11, CC-12, CC-13, CC-14, and other persons, known and unknown, did knowingly and willfully, conspire, confederate, and agree with one another to commit wire fraud, in violation of Title 18, United States Code, Section 1343, that is: to devise, and intend to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises that were material, and for the purpose of executing such scheme and artifice, and attempting to do so, knowingly caused to be transmitted by means of wire, radio, and television communication any writings, signs, signals, pictures, and sounds in interstate and foreign commerce.

8

## MANNER AND MEANS

20.    Among the manner and means by which JOANN JOHNSON DAVIS [1], CLINTESS ROBERTA JOHNSON BARRETT [2], MI'CHELLE NECOLE BELL-JOHNSON [3], ROBERT JOHNSON, JR. [4], CANDACE AGATHA BRUNSON-POOLE [5], Felecia Revonda Little, CC-1, CC-2, CC-3, CC-4, CC-5, CC-6, CC-7, CC-8, CC-9, CC-10, CC-11, CC-12, CC-13, CC-14, and other persons, known and unknown, carried out the conspiracy were the following:

21.    Friends and relatives of JOANN JOHNSON DAVIS [1] would submit bid proposals for CCHA small purchase contracts that DAVIS [1] was empowered to award.

22.    CLINTESS ROBERTA JOHNSON BARRETT [2], Felecia Revonda Little, CC-1, and divers other persons, known and unknown, would generate false bid proposals for small purchase contracts using the stolen identities and related company letterhead of actual individuals and/or businesses to compete against the bid proposal for the small purchase contract submitted by the friend or relative of JOANN JOHNSON DAVIS [1].

23.    JOANN JOHNSON DAVIS [1] would select the bid proposal submitted by her friend or family member as the winner and award the CCHA

9

small purchase contract to that individual, all the while knowing that there had been no competitive bid process as required by HUD regulations, and regardless of whether that friend or family member was qualified to perform the contracted work.

24.     At times, no work would be performed. At other times, a different friend or family member would perform the contracted work than the individual and/or entity awarded the small purchase contract, the latter of whom would act as a middleman to deliver payment. Regardless, the CCHA would pay the friend or family member for the small purchase contract, via bank draft or wire transfer issued by First Citizens Bank, a financial institution that processed transactions via interstate wires.

25.     JOANN JOHNSON DAVIS [1] would, at times, receive a cash payment as a kickback from the friend or relative awarded the CCHA small purchase contract in return for rigging the bid proposal process. DAVIS [1] would, at times, deposit that cash into an account she held with Wells Fargo Bank, N.A., a financial institution that processed transactions via interstate wires.

26.     In total, between 2016 and 2020, the CCHA awarded small purchase contracts to no less than thirteen friends or relatives of JOANN

JOHNSON DAVIS [1], without using the required competitive bidding process; that is, DAVIS [1] awarded the small purchase contract to a friend or relative knowing that the competing "bids" were false.

27. From in or about January 2016 up to and including April 2020, the CCHA paid over $200,000 to friends and relatives of JOANN JOHNSON DAVIS [1] for alleged CCHA small purchase contract work.

## Overt Acts

28. In furtherance of the conspiracy, and to effect the objects thereof, members of the conspiracy and others, known and unknown, committed and caused to be committed the following overt acts, among others, within the Middle District of North Carolina, and elsewhere:

## Cash Kickbacks Paid to JOANN JOHNSON DAVIS [1]: CC-3

29. In or around 2016, JOANN JOHNSON DAVIS [1] awarded CC-3, a relative, a small purchase contract with CCHA for event planning. However, CC-3 did not prepare or submit this bid. CC-3 cashed a check from CCHA for $4,000 and gave $2,500 in cash back to Little.

30. At some time thereafter, JOANN JOHNSON DAVIS [1] advised CC-3 that CCHA needed a "contractor in name" to collect a check for an upcoming contract, per the CCHA procurement policy. CC-3 never produced an

11

invoice but later received a check in the mail from CCHA for $4,000. CC-3 cashed the check and gave $2,500 in cash back to DAVIS [1].

## Cash Kickbacks Paid to JOANN JOHNSON DAVIS [1]: MI'CHELLE NECOLE BELL-JOHNSON [3]

31.    On or about March 3, 2016, MI'CHELLE NECOLE BELL-JOHNSON [3] deposited a check from CCHA for $800 for purported services provided and transferred $500 to JOANN JOHNSON DAVIS [1].

32.    On or about March 17, 2016, MI'CHELLE NECOLE BELL-JOHNSON [3] deposited a check from CCHA for $800 for purported services provided and transferred $600 to JOANN JOHNSON DAVIS [1].

33.    On or about June 23, 2016, MI'CHELLE NECOLE BELL-JOHNSON [3] deposited a check from CCHA for $800 for purported services provided and transferred $700 to JOANN JOHNSON DAVIS [1].

34.    On or about December 11, 2017, MI'CHELLE NE'COLE BELL-JOHNSON [3] deposited a check from CCHA for $3,500 for purported services provided and on December 15, 2017, transferred $2,500 to JOANN JOHNSON DAVIS [1].

35.    On or about October 12, 2018, MI'CHELLE NECOLE BELL-JOHNSON [3] deposited a check from CCHA for $800 and a check from the

12

Chatham County Housing Authority Initiative for $800, both for purported services provided and transferred $900 to JOANN JOHNSON DAVIS [1].

**Cash Kickbacks Paid to JOANN JOHNSON DAVIS [1]: CC-4**

36. On or about October 10, 2019, JOANN JOHNSON DAVIS [1] awarded CC-4, a friend, a small purchase contract with CCHA for commercial landscaping services based upon a bid proposal purporting to be submitted by CC-4. However, CC-4 did not prepare or submit this bid nor did he prepare an invoice related thereto; in fact, his name was misspelled on the invoice. Furthermore, the two bid proposals supposedly competing with the fraudulent CC-4 bid were also false, using the personal identifying information of Victim-3 and Victim-7. CC-4 cashed a check from CCHA for $4,000 related to this no-bid small purchase contract and gave approximately $3,700 in cash back to DAVIS [1].

**Cash Kickbacks Paid to JOANN JOHNSON DAVIS [1]: CC-5**

37. At a date unknown to the Grand Jurors, but shortly prior to on or about July 25, 2017, JOANN JOHNSON DAVIS [1] awarded CC-5, a friend, a small purchase contract with CCHA for SEMAP assessment based upon a bid proposal purporting to be submitted by CC-5. However, CC-5 did not prepare or submit this bid, nor did she ever perform the work or prepare an invoice

13

related thereto. Furthermore, the two bids supposedly competing with the fraudulent CC-7 bid were also false; one used the personal identifying information of CC-2, a relative of DAVIS [1], and the other used the personal identifying information of CC-7, a relative of DAVIS [1]. CC-5 cashed a check from CCHA for $2,500 for the alleged SEMAP assessment and gave $2,000 in cash back to DAVIS [1].

38.     At a date unknown to the Grand Jurors, but prior to on or about January 29, 2019, JOANN JOHNSON DAVIS [1] awarded CC-5, a friend, a small purchase contract with CCHA for a "Home Run" workshop based upon a bid proposal purporting to be submitted by CC-5. However, CC-5 did not prepare or submit this bid, nor did she ever perform the work or prepare an invoice related thereto. Furthermore, the two bid proposals supposedly competing with the fraudulent CC-5 bid were also false, using the personal identifying information of Victim-2 and CC-8. CC-5 cashed a check from CCHA for $4,000 for payment related to the alleged "Home Run" workshop and gave $3,500 in cash back to DAVIS [1].

---

## No Work Bids and Payments: CC-7

39. At a date unknown to the Grand Jurors, but shortly prior to on or about January 29, 2018, JOANN JOHNSON DAVIS [1] awarded CC-7, a relative, a small purchase contract with CCHA for a workshop entitled "Build Your Common Cent$" based upon a bid proposal purporting to be submitted by CC-7. However, CC-7 did not prepare or submit this bid, nor did she ever perform the work or prepare an invoice related thereto. Furthermore, the two bids supposedly competing with the fraudulent CC-7 bid were also false; one used the personal identifying information of Victim-2, and the other was submitted by CC-14, a self-employed cosmetologist and friend of DAVIS [1] with no training and/or expertise in the services she was bidding upon. CC-7 cashed a check from CCHA for $1,000 for payment related to the alleged workshop.

40. At a date unknown to the Grand Jurors, but shortly prior to on or about November 7, 2019, JOANN JOHNSON DAVIS [1] awarded CC-7, a relative, a small purchase contract with CCHA for three different workshops based upon a bid proposal purporting to be submitted by CC-7. However, CC-7 did not prepare or submit this bid, nor did she ever perform the work or prepare an invoice related thereto. Furthermore, the two bids supposedly

15

competing with the fraudulent CC-7 were also false; one used the personal identifying information of Victim-2, and the other was attributed to CC-8, who never submitted a bid proposal for any CCHA small purchase contracts. CC-7 cashed a check from CCHA for $2,500 for payment related to this no-bid small purchase contract.

### Cash Kickbacks Paid to JOANN JOHNSON DAVIS [1]: CC-8

41.     At a date unknown to the Grand Jurors, but shortly prior to on or about September 26, 2018, JOANN JOHNSON DAVIS [1] awarded CC-8, a friend, a small purchase contract with CCHA for a workshop entitled "Special Topics for Future Homeowners" based upon a bid proposal purporting to be submitted by CC-8. However, CC-8 did not prepare or submit this bid, nor did she prepare an invoice related thereto. Furthermore, the two bid proposals supposedly competing with the fraudulent CC-8 bid were also false, using the personal identifying information of Victim-2 and Business-1. CC-8 cashed a check from CCHA for $4,000 for payment related to the alleged workshop and gave approximately $3,000 in cash back to DAVIS [1].

42.     On or about March 27, 2019, JOANN JOHNSON DAVIS [1] offered CC-8, a friend, a job putting together packets for CCHA. CC-8 then cashed a check from CCHA for $4,000 for those purported services provided

and gave between $3,500 and $3,000 in cash back to JOANN JOHNSON DAVIS [1].

## Cash Kickbacks Paid to CANDACE AGATHA BRUNSON-POOLE [5]: CC-9

43.     At a date unknown to the Grand Jurors but prior to on or about March 29, 2019, JOANN JOHNSON DAVIS [1] and CANDACE AGATHA BRUNSON-POOLE [5] agreed that they would generate a false resume for CC-9 in support of CC-9's bid proposal for a CCHA small purchase contract, without CC-9's knowledge.

44.     At a date unknown to the Grand Jurors but prior to on or about March 29, 2019, JOANN JOHNSON DAVIS [1] awarded a CCHA small purchase contract for "HCV Program Recertification Processes" in the amount of $402 to CC-9, all the while knowing that CC-9 had not actually bid for the small purchase contract and CC-9 was not qualified to perform the contracted work.

45.     On or about March 29, 2019, JOANN JOHNSON DAVIS [1] caused the CCHA to issue a check for $402 payable to CC-9 for "HCV Program Recertification Processes," work that was actually performed by CANDACE AGATHA BRUNSON-POOLE [5], all the while knowing that CC-9 had not performed the work.

17

46.     On or about March 29, 2019, CANDACE AGATHA BRUNSON-POOLE [5] caused CC-9 to cash the check issued by the CCHA for $402 and remit a portion of those funds back to her.

47.     At a date unknown to the Grand Jurors, but occurring after March 2019 and prior to September 2019, JOANN JOHNSON DAVIS [1] and CANDACE AGATHA BRUNSON-POOLE [5] again agreed that they would submit the false resume they had created for CC-9 in support of CC-9's bid proposal for a CCHA small purchase contract, without CC-9's knowledge.

48.     At a date unknown to the Grand Jurors, but occurring after March 2019 and prior to September 2019, JOANN JOHNSON DAVIS [1] awarded a CCHA small purchase contract for "HCV Program Recertification Processes" in the amount of $500 to CC-9, all the while knowing that CC-9 had not actually bid for the small purchase contract and CC-9 was not qualified to perform the contracted work.

49.     On or about September 15, 2019, JOANN JOHNSON DAVIS [1] caused the CCHA to issue a check for $500 payable to CC-9 for "HCV Program Recertification Processes," work that was actually performed by CANDACE AGATHA BRUNSON-POOLE [5], all the while knowing that CC-9 had not performed the work.

18

50. On or about September 16, 2019, CANDACE AGATHA BRUNSON-POOLE [5] caused CC-9 to cash the check issued by the CCHA for $500 and remit a portion of those funds back to her.

**Cash Kickbacks Paid to JOANN JOHNSON DAVIS [1]: CC-10**

51. On or about November 8, 2019, JOANN JOHNSON DAVIS [1] awarded CC-10, a friend, a small purchase contract with CCHA for "customer service trainings and surveys" based upon a bid proposal purporting to be submitted by CC-10. However, CC-10 did not prepare or submit this bid nor did she prepare an invoice related thereto. Furthermore, the two bids supposedly competing with the fraudulent CC-10 were also false; one used the personal identifying information of an employee of Business-1 and the other was submitted by CC-14, a self-employed cosmetologist and friend of DAVIS [1] with no training and/or expertise in the services she was bidding upon.[1] CC-10 cashed a check from CCHA for $2,500 related to this no-bid small purchase contract and gave approximately $2,000 in cashback to DAVIS [1].

---

[1] In June 2019, CC-14 submitted a bid proposal for a CCHA small purchase contract to give a workshop entitled "Not So Common Cent$" which bore a marked resemblance to a bid proposal for a small purchase contract fraudulently attributed to CC-7 on or about January 29, 2018, entitled "Build your Common Cent$" referenced in paragraph 39 *supra*.

19

52.     On or about November 25, 2019, JOANN JOHNSON DAVIS [1] awarded CC-10, a friend, a small purchase contract with CCHA to "review and update the agency SOPs [Standard Operating Procedures] and Administrative Plan" based upon a bid proposal purporting to be submitted by CC-10. However, CC-10 did not prepare or submit this bid nor did she prepare an invoice related thereto. Furthermore, the two bids supposedly competing with the fraudulent CC-10 were also false; one used the personal identifying information of Victim-8, and the other was submitted by CC-14, a self-employed cosmetologist and friend of DAVIS [1] with no training and/or expertise in the services she was bidding upon. CC-10 cashed a check from CCHA for $2,500 related to this no-bid small purchase contract and gave approximately $2,000 in cash back to DAVIS [1].

## **False Bids for Small Purchase Contracts**

53.     On or about June 9, 2017, at JOANN JOHNSON DAVIS [1]'s direction, Felecia Revonda Little generated a false bid proposal for a CCHA small purchase contract using the personal identifying information of Victim-1. JOANN JOHNSON DAVIS [1] also caused to be prepared a false bid proposal for the same small purchase contract, using the personally identifying information of Business-2. JOANN JOHNSON DAVIS [1], through this

20

fraudulent bidding process, awarded the CCHA small purchase contract for $19,200 to MI'CHELLE NECOLE BELL-JOHNSON [3].

54. On or about April 4, 2018, JOANN JOHNSON DAVIS [1] caused to be prepared a false bid proposal for a CCHA small purchase contract, using the personally identifying information of Victim-2. JOANN JOHNSON DAVIS [1], through this fraudulent bidding process, awarded the CCHA small purchase contract for $4,500 to CC-6.

55. On or about September 25, 2018, JOANN JOHNSON DAVIS [1] caused to be prepared a false bid proposal for a CCHA small purchase contract, using the personally identifying information of Victim-5. JOANN JOHNSON DAVIS [1], through this fraudulent bidding process, awarded the CCHA small purchase contract for $3,500 to CC-1.

56. At a date unknown to the Grand Jurors, but shortly prior to on or about January 29, 2019, JOANN JOHNSON DAVIS [1] caused to be prepared a false bid proposal for a CCHA small purchase contract, using the personally identifying information of Victim-2. JOANN JOHNSON DAVIS [1], through this fraudulent bidding process, awarded the CCHA small purchase contract for $4,000 to CC-5.

Case 1:23-cr-00057-UA   Document 1   Filed 02/13/23   Page 21 of 34

57.     On or about January 31, 2019, JOANN JOHNSON DAVIS [1] caused to be prepared a false bid proposal for a CCHA small purchase contract, using the personally identifying information of Victim-9. JOANN JOHNSON DAVIS [1], through this fraudulent bidding process, awarded the CCHA small purchase contract for $3,000 to CC-6.

58.     On or about February 4, 2019, JOANN JOHNSON DAVIS [1] caused to be prepared a false bid proposal for a CCHA small purchase contract, using the personally identifying information of Victim-2. JOANN JOHNSON DAVIS [1], through this fraudulent bidding process, awarded the CCHA small purchase contract for $3,000 to CC-6.

59.     At a date unknown to the Grand Jurors, but shortly prior to on or about March 1, 2019, JOANN JOHNSON DAVIS [1] caused to be prepared a false bid proposal for a CCHA small purchase contract for SEMAP training, using the personally identifying information of Victim-8. JOANN JOHNSON DAVIS [1], through this fraudulent bidding process, awarded the CCHA small purchase contract for $4,500 to CC-13.

60.     At a date unknown to the Grand Jurors, but shortly prior to on or about June 18, 2019, JOANN JOHNSON DAVIS [1] caused to be prepared a false bid proposal for a CCHA small purchase contract, using the personally

22

identifying information of Victim-2. JOANN JOHNSON DAVIS [1], through this fraudulent bidding process, awarded the CCHA small purchase contract for $1,500 to CC-7.

61. At a date unknown to the Grand Jurors, but shortly before on or about October 15, 2019, JOANN JOHNSON DAVIS [1] caused to be prepared a false bid proposal for a CCHA small purchase contract, using the personally identifying information of Victim-7.

62. On or about October 15, 2019, JOANN JOHNSON DAVIS [1] caused to be prepared a false invoice billing CCHA for a small purchase contract, using the personally identifying information of CC-4. In the invoice, CC-4's name was misspelled and his state of residence was incorrect.

63. On or about October 15, 2019, JOANN JOHNSON DAVIS [1] caused to be prepared a false invoice billing CCHA for a small purchase contract, using the personally identifying information of Victim-3.

64. On or about January 7, 2020, JOANN JOHNSON DAVIS [1] caused to be prepared a false bid proposal for a CCHA small purchase contract, using the personally identifying information of Victim-2.

65. On or about January 28 and January 29, 2020, at JOANN JOHNSON DAVIS [1]'s direction, Felecia Revonda Little and CLINTESS

23

ROBERTA JOHNSON BARRETT [2] exchanged electronic communications via cellular telephone regarding the creation of a false bid proposal for a CCHA small purchase contract using Adobe PDF software. Specifically, they had the following exchange:

### January 28, 2020

| | |
|---|---|
| Little: | Can you send me a list of all the ones you have used for quotes, running short on one |
| BARRETT [2]: | Check email |
| Little: | Ok, thanks |
| ... | |
| | Nothing on my end. |
| BARRETT [2]: | I resent it. |
| Little: | Got it. |

### January 29, 2020

| | |
|---|---|
| Little: | Hey, did you get my email? |
| BARRETT [2]: | Let me check.<br>Certificate ... yes. |
| | That's yours ... thought you were doing on [sic] for [CC-11] |
| Little: | Ok, I dont [sic] have the PDF Conversion anymore, couldn't afford to keep paying for it. I couldn't change it without it distorting the form. |

24

| BARRETT [2]: | Gotcha .... I'll do it [smiley face emoji] |
| Little: | Thank you |

### Obstruction: BELL-JOHNSON [3]

66. On or about April 15, 2021, federal agents interviewed MI'CHELLE NECOLE BELL-JOHNSON [3] at her residence in Charlotte, North Carolina, regarding purported work she performed for CCHA as a self-employed independent contractor. BELL-JOHNSON [3] stated that, despite receiving CCHA checks payable to her at a Chapel Hill, North Carolina address from 2016 to 2019, she resided in Washington, D.C. from 2016 to 2018. BELL-JOHNSON [3] stated that she traveled to the CCHA office in Siler City, North Carolina to perform work at the CCHA "on the weekends" in 2018 and 2019, typically three times a month. BELL-JOHNSON [3] stated that she did not create invoices for the work that she performed for CCHA and she was paid a set amount by CCHA, regardless of how much work she performed.

67. Investigators reviewed historical cellular site location data for the cellular telephone number MI'CHELLE NECOLE BELL-JOHNSON [3] indicated she used from 2016 to the present. The records specifically showed that BELL-JOHNSON [3]'s cellular telephone had never used a cellular tower covering Siler City, North Carolina, the location of the CCHA, between the

25

dates of May 27, 2017, and April 30, 2020. The records also reflected that BELL-JOHNSON [3] was the cellular telephone's subscriber.

### Obstruction: DAVIS [1] and JOHNSON, JR. [4]

68. On or about August 11, 2021, after federal agents had approached CC-3 about an investigation into CCHA and JOANN JOHNSON DAVIS [1], CC-3 told DAVIS [1] she had been contacted. DAVIS [1] then traveled to meet with CC-3 in person. At that time, she directed CC-3 to tell federal agents: 1) that Person-1 had performed the work "on the CCHA policy"; and 2) that CC-3 had contracted the CCHA work for which CC-3 was paid out to Person-1. DAVIS advised CC-3 that Person-1 was now deceased.

69. At a date unknown to the Grand Jurors, but after August 11, 2021, ROBERT JOHNSON, JR., [4] contacted CC-3 about the investigation and advised that federal agents had interviewed him. Soon thereafter, JOANN JOHNSON DAVIS [1], JOHNSON, JR., [4], and CC-3 met in person. JOHNSON, JR., [4] then advised CC-3 that he had recorded the interview when investigators spoke to him. DAVIS [1] directed JOHNSON, Jr. [4] to play the recording for CC-3 before CC-3 was next interviewed by investigators.

70. At a date unknown to the Grand Jurors, but after August 11, 2021, multiple relatives of JOANN JOHNSON DAVIS [1] contacted CC-3 about the

26

investigation. One such individual, Person-2, said, "Didn't Jo say you can't go to a dead person and question them?" CC-12 also advised CC-3: "we family" and "don't mess with this." DAVIS [1] then texted CC-3: "you can tell them I'm the big fat aunt you don't fuck with."

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FIVE
### (Wire Fraud)

1.     Paragraph 1 through Paragraph 70 of the Indictment are realleged and reincorporated herein as if fully set forth.

2.     On or about each of the dates set forth below, in the Middle District of North Carolina, and elsewhere, JOANN JOHNSON DAVIS [1], for the purpose of executing the above-described scheme to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire communications in interstate commerce, the following writings, signals, and sounds, each transmission constituting a separate offense:

| COUNT | DATE (on or about) | DESCRIPTION OF THE WIRE TRANSMISSION |
|---|---|---|
| 2 | February 4, 2019 | Negotiation of check no. 117635 from First Citizens Bank account ending x8162 for $4,000, payable to CC-5 |
| 3 | March 27, 2019 | Negotiation of check no. 117726 from First Citizens Bank account ending x8162 for |

27

| COUNT | DATE (on or about) | DESCRIPTION OF THE WIRE TRANSMISSION |
|---|---|---|
| | | $2,500, payable to CC-8 |
| 4 | November 8, 2019 | Negotiation of check no. 118151 from First Citizens Bank account ending x8162 for $2,500, payable to CC-10 |
| 5 | December 2, 2019 | Negotiation of check no. 118187 from First Citizens Bank account ending x8162 for $2,500, payable to CC-10 |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS SIX THROUGH THIRTEEN
### (Aggravated Identity Theft)

On or about each of the dates set forth below, in the Middle District of North Carolina, JOANN JOHNSON DAVIS [1], during and in relation to a felony enumerated in Title 18, United States Code, Section 1028A(c), to wit, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1029(a)(5), as alleged in Count One and incorporated by reference herein, knowingly did possess and use, without lawful authority, a means of identification of another person, as set forth below:

| COUNT | DATE (on or about) | MEANS OF IDENTIFICATION |
|---|---|---|
| 6 | April 4, 2018 | Name of A.G. |
| 7 | September 25, 2018 | Name of P.M. |
| 8 | January 31, 2019 | Name of W.G. |
| 9 | March 2, 2019 | Name of G.D. |

28

| COUNT | DATE (on or about) | MEANS OF IDENTIFICATION |
|---|---|---|
| 10 | June 3, 2019 | Name of A.G. |
| 11 | October 15, 2019 | Name of J.H. |
| 12 | October 15, 2019 | Name of N.S. |
| 13 | January 7, 2020 | Name of A.G. |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNTS FOURTEEN AND FIFTEEN
### (Aggravated Identity Theft)

On or about each of the dates set forth below, in the Middle District of North Carolina, JOANN JOHNSON DAVIS [1] and CANDACE AGATHA BRUNSON-POOLE [4], during and in relation to a felony enumerated in Title 18, United States Code, Section 1028A(c), to wit, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1029(a)(5), as alleged in Count One and incorporated by reference herein, knowingly did possess and use, without lawful authority, a means of identification of another person, as set forth below:

| COUNT | DATE (on or about) | MEANS OF IDENTIFICATION |
|---|---|---|
| 14 | March 29, 2019 | Name of A.P. |
| 15 | September 15, 2019 | Name of A.P. |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

29

## COUNT SIXTEEN
### (Program Fraud)

1.      Paragraph 1 through Paragraph 70 of the Indictment are realleged and reincorporated herein as if fully set forth.

2.      From in or about January 2018, continuing up to and including in or about December 2018, the exact dates unknown, in the Middle District of North Carolina, JOANN JOHNSON DAVIS [1], then being an agent of the Chatham County Housing Authority, an organization which received during 2020 benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, that is, the United States Department of Housing and Urban Development, did embezzle, steal, obtain by fraud, and otherwise knowingly convert to the use of any person other than the rightful owner and intentionally misapply property valued at $5,000 or more, such property having been owned by, and under the care, custody, and control of such organization, that is, $42,745.85 in Chatham County Housing Authority funds; in violation of Title 18, United States Code, Section 666(a)(1)(A).

Case 1:23-cr-00057-UA   Document 1   Filed 02/13/23   Page 30 of 34

## COUNT SEVENTEEN
(Program Fraud)

1.      Paragraph 1 through Paragraph 70 of the Indictment are realleged and reincorporated herein as if fully set forth.

2.      From in or about January 2019, continuing up to and including in or about December 2019, the exact dates unknown, in the Middle District of North Carolina, JOANN JOHNSON DAVIS [1], then being an agent of the Chatham County Housing Authority, an organization which received during 2020 benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, that is, the United States Department of Housing and Urban Development, did embezzle, steal, obtain by fraud, and otherwise knowingly convert to the use of any person other than the rightful owner and intentionally misapply property valued at $5,000 or more, such property having been owned by, and under the care, custody, and control of such organization, that is, $92,452.00 in Chatham County Housing Authority funds; in violation of Title 18, United States Code, Section 666(a)(1)(A).

31

## COUNT EIGHTEEN
### (Program Fraud)

1.     Paragraph 1 through Paragraph 70 of the Indictment are realleged and reincorporated herein as if fully set forth.

2.     From in or about January 2020, continuing up to and including in or about December 2020, the exact dates unknown, in the Middle District of North Carolina, JOANN JOHNSON DAVIS [1], then being an agent of the Chatham County Housing Authority, an organization which received during 2020 benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, that is, the United States Department of Housing and Urban Development, did embezzle, steal, obtain by fraud, and otherwise knowingly convert to the use of any person other than the rightful owner and intentionally misapply property valued at $5,000 or more, such property having been owned by, and under the care, custody, and control of such organization, that is, $8,860.00 in Chatham County Housing Authority funds; in violation of Title 18, United States Code, Section 666(a)(1)(A).

32

## COUNT NINETEEN
### (False Statement)

On or about January 21, 2020, in the County of Chatham, in the Middle District of North Carolina, JOANN JOHNSON DAVIS [1], in a matter within the jurisdiction of the Department of Housing and Urban Development – Office of Inspector General, an agency within the United States Department of Housing and Urban Development, a department of the executive branch of the Government of the United States, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation; that is, JOANN JOHNSON DAVIS [1] represented to a Special Agent with the Department of Housing and Urban Development – Office of Inspector General that, at the Chatham County Housing Authority, all payments to contractors were made for services actually performed, a fact material to an ongoing investigation, when she then and there well knew that contractors were in fact

33

paid for services they did not perform; in violation of Title 18, United States Code, Section 1001(a)(2).

DATED: February 13, 2023

SANDRA J. HAIRSTON
United States Attorney

BY: JOANNA G. MCFADDEN
Assistant United States Attorney

A TRUE BILL:

FOREPERSON

34